UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

7 MILE & KEYSTONE, LLC, a
Michigan Limited Liability Corporation,

    Plaintiff,

                                                                  Case No. 11-12930
-vs-                                                     HON. AVERN COHN

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, a Connecticut
Corporation,

    Defendant.
_____/

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 38)
AND DISMISSING CASE**

I.

A.

This is a fire loss insurance case. Now before the Court is a motion for summary judgment by defendant insurance company, Travelers Casualty Insurance Company of America (Travelers) (Doc. 38), against plaintiff, 7 Mile & Keystone, LLC (Keystone and/or Bacall [sole shareholder of Keystone]). The motion is described by defendant as follows:

> Plaintiff has sued its insurer, Travelers, for breach of contract for failing to pay claims associated with a June 29, 2010, fire under a commercial insurance policy. Travelers moves for summary judgment of plaintiff's complaint in its entirety because there is no genuine dispute as to any material fact that plaintiff made misrepresentations, concealed facts and engaged in fraud as to its claims under the policy by submitting falsified documents to Travelers in support of its claim. Plaintiff's misrepresentations, concealment and fraud relate to material facts, specifically plaintiff's business income (i.e., lost rents) claim and the circumstances of the loss. Under Travelers' policy and Michigan's Insurance Code, these acts of

1

concealment, misrepresentation and fraud bar any recovery under the policy.

B.

The fire as noted occurred on June 29, 2010, at a building located at 5125-5135 E. Seven Mile Road in the City of Detroit. It is generally agreed that the cause of the fire was arson. The cause of the fire is not relevant to defendant's motion. The relevant facts on which the motion is based in summary are as follows:

- Keystone, owner of the building, claimed first party insurance benefits from Travelers, based on destruction of the building by a fire.

- Following the fire, Keystone sought recovery of $1,012,011.38 for damages to the building, and $56,759.12 for loss of business income. The claim for loss of business income was ultimately withdrawn when it became clear that the lease for a future occupancy on which it was based (the Dollar King lease), could not be proven to be a valid lease.

- During the course of the investigation of Keystone's claim, Keystone represented that the lease was drafted and signed prior to the fire. During discovery it was established that the lease was not created until July, 2010, almost a month after the fire.

As explained by Travelers in its brief in support of its motion:

> Quite simply, plaintiff lied to Travelers during his Examination Under Oath ("EUO") when it represented that the lease was both drafted and signed prior to the June 29, 2010 fire. Plaintiff then covered up this lie to mislead Travelers' investigation by admittedly requesting that plaintiff's attorney (the drafter of the lease) falsify his own billing records and change the creation date of the Dollar King lease from "July 21, 2010" to "June 2010" in order to conceal the actual creation date of the lease from Travelers. Plaintiff admits that he provided these intentionally falsified and incorrect billing records to Travelers

as verification of the validity of the lease and in support of plaintiff's claim.

C.

The motion is GRANTED. This case is DISMISSED.

The Travelers' policy (Ex 9[1]) and the Michigan Insurance Code void coverage when an insured makes false statements, conceals material facts and makes material misrepresentations. *See, e.g.*, Mich. Comp. Laws § 500.2833(1)(c); *Martin v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 275261, 2008 WL 1807940 (Mich. Ct. App. April 22, 2008). There is no genuine issue of material fact that (1) Keystone in the person of Bacall made material misrepresentations regarding the Dollar King lease on which the claim for loss of business income was based, (2) with the intent to submit a false business income loss claim to Travelers. Keystone's argument that there is no proof that Bacall was responsible for the fire is irrelevant. Material misrepresentations and false statements made with the intent to defraud the insurer as a matter of law void coverage under an insurance policy.

II.

The material facts over which there is no genuine issue follow:

1.    In 2009 Bacall formed Keystone. Keystone owned a commercial building. Bacall recently purchased the building, located at 5125-5135 E. Seven Mile Road in the City of Detroit. Bacall purchased the building out of foreclosure for $55,000.00 four (4) months before the fire (Ex. 3).

2.    At the time of purchase the building was occupied by a tenant. Shortly before the fire the tenant was evicted for non-payment of rent (Ex. 5).

3.    At the time of purchase Keystone obtained a policy of fire insurance from

---

[1] Exhibit numbers refer to the exhibits filed by Travelers in support of its motion.

Travelers for replacement value if the building was a fire casualty (Ex. 9).

4.    Following the fire Keystone made a claim to Travelers for replacement value of the building; it was a total loss (Ex. 13).

5.    Almost immediately Travelers began an investigation of the claim. From the inception of its investigation, Travelers was made aware of the Dollar King lease. Travelers, through Joseph Zack (Zack), its General Adjuster, requested a copy of it from Bacall (Ex. 18). Zack was advised by Jeff Molino (Molino), Keystone's adjuster, that he was working on getting Zack a copy. It was some time into the investigation that a copy was given to Travelers. The copy Travelers received was signed only by the tenant (Ex. 17).

6.    Molino told Zack on July 8, 2010, that "[w]e are working to get copies of old and new leases" (Ex. 18). Later, on July 20, 2010, Molino told Zach that "I am also trying to secure leases, rent revenue and expense data for use in preparing a rental income claim" (*Id.*).

7.    As part of the claim process, Keystone produced to Travelers a Sworn Statement in Proof of Loss signed under oath by Bacall seeking recovery of $1,012,011.38 for damages to the building as well as a yet uncalculated business income loss (Ex. 13).

8.    Molino confirmed that he reviewed the Proof of Loss with Bacall and explained to him that any inaccuracies, misstatements, untruthful information and/or misrepresentations could lead to denial of the claim (Ex. 14 at 12-13).

9.    Molino testified that:

- the business income loss amount was left open at the time the Proof of Loss was submitted
- the reference on the Proof of Loss which states, "does not include loss

of income," was written by him after a conversation with Bacall in which he said he wanted to submit a business income claim

- a handwritten note on the Proof of Loss states that a loss of income claim was forthcoming (Ex. 14)

10. Bacall made an Examination Under Oath statement as part of Travelers' investigation (Ex. 1). Bacall said that based on the Dollar King lease, he believed Keystone lost income as a result of the fire (*Id.* at 111).

11. A copy of the Dollar King lease was eventually given to Travelers. It was not signed by both parties (Ex. 17).

12. George Orow (Orow), Bacall's cousin, testified that Bacall approached him about renting space in the building. Orow said that Bacall provided direction to and paid his attorney, Randal Toma (Toma) to incorporate Dollar King and draft the lease. Orow said he never saw the space in the building, did not have any knowledge regarding its condition, never contacted any vendors to secure inventory, or took any steps to operate a business in the building as a tenant (Ex. C[2] at 3-5).

13. (a) Keystone's Answers to Interrogatories (Ex. 16) stated it sought recovery for loss of business income;

(b) Keystone's Rule 26(a)(1) Disclosures (Ex. 33) stated it sought recovery for loss of business income;

(c) Keystone's Rule 26(a)(2) Expert Disclosure (Ex. 15) stated it would call as a witness Molino to testify that the loss of income was $56,759.12.

14. Molino acknowledged that the Dollar King lease was "the centerpiece of a

---

[2] Exhibit letters refer to the exhibits filed by Keystone in its response to Travelers' motion.

5

business income claim because it provided the terms and conditions used to calculate a business income claim" (Ex 14).

15. In response to Travelers' concern about the validity of the Dollar King lease, and the fact that Travelers on its own discovered that Dollar King of 7 Mile, the corporation organized by Orow, was incorporated nearly a month after the fire, Bacall submitted to Travelers billing records of Toma which showed that the lease was drafted in June of 2010 (Ex. 31).

16. Toma, after a review of his billing record, testified that the Dollar King lease was not created until July 21, 2010 (Ex. 22 at 61). This was the date Toma emailed Bacall "a new lease for the premises" (Ex. 21 at 2). This date is corroborated by the following:

- An examination of Toma's word processor displays the creation date of the lease as July 21, 2010 (Ex. 23, 24);
- Toma's original billing records reflected that the lease was drafted and emailed on July 21, 2010 (Ex. 25); and
- Toma's handwritten time entry of 07-21-2010 states "draft and e-mail lease" (Ex 26).

17. On October 22, 2010, Zack wrote Keystone and stated that Travelers needed a multitude of documents, including "Any and all documents pertaining to the exchange of any amounts of money between you and George Orow pertaining to the improvement, betterment, lease and/or stocking of the subject property" (Ex. 11).

18. On October 26, 2010 Bacall emailed Toma requesting a copy of his invoice for drafting the Dollar King lease (Ex. 29).

19. Toma responded on October 29, 2010, by emailing Bacall a copy of his invoice which contained the statement:

6

| 07-21-2010 Drafted & E-Mailed Lease for Dollar King | Time 1.25 | Total $250 (Ex. 25) |

20. On October 31, 2010, Bacall asked Toma to change the lease draft date (Ex. 30).

21. Toma complied and sent Bacall a revised invoice to show the lease was drafted in June, 2010 (Ex. 31).

22. Bacall submitted the revised invoice to Travelers. Travelers was not told of the alteration.

23. Toma acknowledged that the change of date of the drafting the Dollar King lease from "July 21, 2010" to June "2010" was incorrect, and does not reflect the actual date that the lease was drafted and emailed to Bacall (Ex. 22 at 61).

III.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

IV.

Travelers is entitled to summary judgment because Bacall made material misrepresentations about the Dollar King lease with an intent to defraud Travelers by submitting a false business income loss claim.

A.

There is no genuine issue of material fact that the circumstances surrounding the creation of the Dollar King lease, and Bacall's representation that the lease existed prior to the fire, were material to Travelers' investigation. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Mina v. Gen. Star Indem. Co.*, 218 Mich. App. 678, 686 (1996), *rev'd in part on other grounds*, 455 Mich. 866 (1997) (citation omitted). As Zach communicated to Molino on September 22, 2010, "The lease agreement is part of the arson investigation, affects the amount of [business income] loss and also affects the [actual cash value] calculation under the broad evidence rule" (Ex. 28).

First, the facts and circumstances surrounding the creation of the lease were material and relevant to Travelers' arson investigation. Whether Keystone had a viable lease at the time of the fire loss was relevant in determining if Bacall had a motive to burn the building. Thus, Bacall's misrepresentation about the creation date of the lease was material to the arson investigation.

Second, the Dollar King lease was material to Travelers' investigation surrounding the business income loss claim. This claim relied solely on the existence of the Dollar King lease, which Bacall falsely represented was a viable lease agreement prior to the fire.

As to the second point, Keystone says that it never submitted a proof of loss for the

business income loss claim, and, therefore, the lease is irrelevant. The Court is not persuaded. Keystone's position is belied by the evidence. The undisputed facts above make clear that Keystone asserted a business income loss claim based on the non-existent lease. *See supra* at 4–5, ¶¶ 5–10, 13–14.

As is gleaned from the above undisputed facts, it is evident that Keystone put Travelers on notice that it was claiming lost business income based on the Dollar King lease. Thus, the overwhelming evidence shows that the lease was material and relevant to Travelers' investigation.

The fact that Keystone eventually withdrew the business income claim does not change this result. Keystone cannot seriously argue, based on this record, that the lease, and Bacall's misrepresentation that it existed prior to the fire, was not material to Travelers' investigation.

B.

There is also no genuine issue of material fact that Bacall's representation that the lease existed prior to the fire was false, and that he intended to obtain money from Travelers by submitting a fabricated business income loss claim.

1.

The undisputed facts detailed in section II above reveal that Bacall's representation that the Dollar King lease existed prior to the fire was false. *See supra* at 5–7, ¶¶ 12, 15–23.

In addition to the above facts, both Bacall's and Orow's testimony, and the lease that Bacall provided to Travelers, do not support Keystone's position that the Dollar King lease was in place prior to the fire.

The lease is undated and shows that it was entered into on August 1, 2010, after the fire (Ex. 17).  In his EUO, Bacall testified that he did not remember if he even signed the lease:

> Q: Did you ever sign the lease?
>
> A: I don't remember.  I'm assuming I did.  I'm not sure if I did.
>
> Q: As you sit here today, do you know if there's a lease out there that has your signature on it as well as [Orow]'s signature?
>
> A: I'm not sure.
>
> Q: Who would know that?
>
> A: My attorney.
>
> Q: Do you know where Exhibit 41 [the lease with Orow's signature] came from, where you got it to provide it to us?
>
> A: From my attorney.
>
> Q: Do you know why your attorney didn't give us one that had both signatures on it or give you one that had both signatures on it?
>
> A: I don't know.
>
> Q: Do you know if your attorney was present when [Orow] signed this?
>
> A: I'm not sure.  (Ex. 1 at 96).

Keystone relies solely on Bacall's statement that the lease was entered into prior to the fire. This is not corroborated by any other evidence, and Bacall himself was not sure if he signed the lease.

Like Bacall, Orow testified at his deposition that he did not know if he signed the

10

lease, or if someone else signed it for him (Ex. C at 4). Further, Orow testified that he never visited the building, nor did he see any photographs of the interior (Ex. 20 at 3). Orow believes he saw a picture of the exterior of the building on a cellular phone (*Id.*). He did not secure any inventory or visit the surrounding area to determine if there were any nearby competitors (*Id.* at 4). Orow did not secure any financing for the business, nor did he take any actions that a person with an existing lease agreement for a business would undertake (*Id.* at 4-5). His testimony does not support Keystone's position that the Dollar King lease was a valid lease prior to the fire.

In sum, there is no genuine issue of material fact that Bacall lied about the creation date of the lease, wilfully misleading Travelers in an attempt to falsify a business income loss claim.

2.

Finally, there is no genuine issue of material fact that Bacall intended to obtain money from Travelers by submitting a false business income loss claim. Generally, "[t]he intent with which a false representation is made and the existence of fraud is . . . a question of fact to be decided by the jury in view of all of the circumstances." *Trice v. Commercial Union Assur. Co.*, 334 F.2d 673, 677 (6th Cir. 1964) (citations omitted). However, where reasonable minds cannot differ as to the reason why the insured made material misrepresentations, the issue of intent is decided by the court as a matter of law. *See Flowers v. IDS Prop. Cas. Ins. Co.*, No. 10-cv-15164, 2012 WL 5906728, at *7 (Nov. 26, 2012).

Here, there is only one inference that can be drawn from Bacall's fabrication of the Dollar King lease– Keystone attempted to submit a false business income loss claim in

order to unjustly collect more on the claim. Therefore, there is no question that Bacall intended to defraud Travelers.

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment was granted. Drawing all reasonable inferences in favor of plaintiff, as the Court must do, there are no genuine issues of material fact preventing entry of judgment. Accordingly, this case is dismissed and all remaining motions are MOOT (Docs. 40, 41, 43, 44 and 60).

SO ORDERED.

                                              S/Avern Cohn
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

Dated: April 16, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 16, 2013, by electronic and/or ordinary mail.

                                              S/Sakne Chami
                                              Case Manager, (313) 234-5160